May it please the court, Justin Abbasi with the Sheridan Law Firm representing Andrea Olson. I've been appointed by the NYSERDA to represent Ms. Olson-Cobono. This is an appeal from a two-day bench trial. Could you keep close to the microphone please? You're going back and forth and it's a better sound when you're close by. I'll try. Thank you. I moved my microphone. I'm going to reserve three minutes for rebuttal. Andrea Olson, it's undisputed in this case, is an employee of, was an employee of BPA, Bonneville Power Administration, and it's undisputed that the Bonneville Power Administration did not notify her of her FMLA rights. It's undisputed at this stage now that she was an employee. But could I ask about that she was associated with Pacific Disability Management LLC and then was she hired by MBO or was her LLC hired? I'm just, it would be helpful if you could just lay out the relationships for me. Sure thing, your honor. Pacific Disability is Andrea Olson's company. Her only client was BPA. On summary judgment, BPA moved to say that it is not required to provide her notice because she is an independent contractor. The court decided this issue and said she is in fact an employee of BPA. So, is this true even, so was she hired directly or was Pacific Disability Management LLC hired directly or was there no Pacific Disability Management LLC? I'm just worried actually about standing because who was hired by BPA and who has the authority to bring this action? Pacific Disability and Andrea Olson are one in the same. I believe it was, I believe it was an LLC or there is some reason that the LLC is not a person here. I believe the FMLA rights belong to the person and she was the one who was considered to be the employee. But there is another question that I have about who is the employer. When your client took leave, she notified MBO, not BPA, and in fact she said don't even tell them. So, is that somehow an acknowledgement on her part that MBO was the employer that was responsible for FMLA compliance? So, this goes to the question of whether BPA was the primary employer or the secondary employer. Well, it also goes to willfulness. If there is a serious question, even if we don't know for sure who is the primary employer, it certainly to me would affect whether they thought they were required to give notice. I agree, your honor. So, the way this relationship worked was originally as an independent contractor, Andrea Olson worked for Employment Relationship. BPA placed MBO between Andrea Olson and itself. And in doing this, they stopped renewing her contract and instead contracted directly with MBO. Now, the joint employer that MBO is, and that is a professional employer organization, not a placement agency. A professional employment organization handles leave. This is what the regulation says. It handles payroll and benefits. That is what MBO was doing. But ultimately, it is a factual question whether BPA was a primary employer or a secondary employer. Counsel, if it is that murky, how can the failure of BPA to give notice, if it wasn't even clear that they were the one required to give notice, how can their failure be willful? It wasn't clear because the misclassification of her being, for purposes of a law, an employee, was either knowing or reckless. It seems to me that, obviously speaking only for myself, that regardless of even if it were required to give notice as the primary employer, I have difficulty seeing that there is willful interference with her rights, which is what the statute is about. It doesn't say willful failure to give notice. It says willful interference. And that, I just don't see any fact that supports the idea that BPA willfully interfered with her rights, especially because she knew more about this area of law than probably anybody that is now in this virtual room. For the record, she is extremely competent in the area of reasonable accommodations. She has really no experience with death in Malaya. She knew about... Well, I'm sorry, that was kind of a diversion on my part. What did BPA do that you would say is a willful interference with her rights, as distinct from a failure to give her notice? So to be clear, the FMLA interference statute is both for for taking leave and attempting to take leave. She believed she was taking intermittent leave. BPA did not discuss this issue with her. Did she say that with MBO? So she invoked her FMLA rights when she went to MBO. And as Judge Graver said, she told MBO not to tell BPA what she was doing. She did not tell MBO not to tell BPA what she was doing. This is, in fact, in the United States' brief. But as you can see in our reply, she actually just asked to be notified if her invoked her FMLA leave rights. So she knew that she was taking leave and she invoked FMLA. And so what exactly did BPA not do and what should BPA have done and when? Under Ragsdale and interpreting Ragsdale, the third circuit's test, which I believe the court should be adopting, Konosheti, Ms. Olson had a right to meaningful leave. And in that, I mean, she had the right to structure her leave herself. I'm asking you what BPA should have done and when should they have done it? They should have communicated with her at some point and they would have at some point. So at what point should BPA have communicated and what should they have Oh, she announced it at BPA that she was invoking FMLA leave. She said, I can't do the essential functions of my position. And they knew that she was invoking FMLA leave. So when did they know that? When she said she was taking leave for a medical reason. So taking leave for a medical reason is enough to invoke FMLA leave? It is. Okay. And so at that point, they should have told her what? At that point, or at least after she filed her paperwork, they should have spoken to her. Well, it doesn't really matter because they didn't talk to her at all. It really, it was an undisputed issue. I do want to bring the court's attention before I run out of time, that this is an appeal from findings of fact and conclusions of law under federal rule of clearly erroneous, right? That's why we're asking you these questions. The district court didn't opine on the willfulness of the failure to notify. Judge Graber, in the first argument, you said, if there's not a violation, there cannot be a willful violation. The district court here found there was not a violation because BPA prevailed on its affirmative defense that she was no longer entitled to her position. That affirmative defense, we're not challenging that on appeal. So the district court didn't ever make a conclusion about whether she was prejudiced for the failure to be notified. Counsel, it appears to me that on page 21 of the court's for willfulness and says that the defendants did not either know or show reckless disregard for whether their conduct was prohibited by statute. They consulted with their lawyers and so on. So there is, it seems to me, a finding of no willfulness. Why is that not a finding of no terminating? Ms. Olson, this is established by the court's findings. I understand that, but this is to Judge Okuda's point. This appears to me to be a finding. Accordingly, even assuming that defendants did violate the FMLA, plaintiff has not shown that it is more likely than not that defendants acted willfully. I don't understand why that isn't a finding to which we owe deference. It's a legal conclusion, Your Honor. There really is no finding about the willfulness of the failure to notify. That being said, that being said, well, I'm still on the evidence presented at trial shows that defendants did not either know or show reckless disregard for whether their conduct was prohibited by statute. That's looking at the willfulness standard. That's a factual finding. Yes, Your Honor. But because the judge legally erred in not assessing the prejudice from the judge's own finding that she believed she was invoking intermittent leave, the judge didn't actually give her the right, didn't ascribe her with the right to meaningfully take leave. So the judge's ultimate finding of a lack of willfulness didn't concern whether she was not notified about her intermittent leave. Really, there is no finding of fact regarding the willfulness of her failure to notify because of that affirmative defense. Counsel, you mentioned Rule 52. Yes. Was there a request for revised findings of fact and conclusions of law? There wasn't, Your Honor. So this is a weird case because there was one, there was no discovery in it. Two, she had only limited appointments of counsel. So she got counsel for trial and then they were out right after. So they didn't really have enough. Once the case is done, they were done with it. I'll reserve the rest of my time for rebuttal. You may do that. We'll hear from Mr. Hager. Thank you. May it please the court, Jared Hager for the United States. After a two-day bench trial, the district court properly rejected Ms. Olson's notice theory because she didn't show prejudice to her FMLA rights. And the record contains ample factual support for that district court's ruling. But before I get there, I want to discuss a little bit of the legal context of this case. In order to prevail on a two substantive rights, now that's the Wolverine case. There's no case in the Ninth Circuit that holds that. And you'll note that the district court had to rely on Liston v. Nevada, which is an unpublished Ninth Circuit decision. And we think it would be helpful for the court to make that clear that in order to prevail on a regulatory notice violation, you have to be able to show prejudice to your FMLA rights, not your ADA rights, not your general right to be free from tortious anxiety or other things that Ms. Olson is now claiming on appeal. Secondarily, the legal context is important to understand that the amended complaint focused on a failure to restore and or termination theory. None of those rulings are on appeal here. And so I think that forecloses any ability to establish prejudice in this case. Third, and I think Judge this is sub B of 29 CFR 800.3, 825.300B. Now there's no dispute that BPA provided the statutorily required notice. And this is the general notice that you post in your mail room about your right to have FMLA leave. There's also no dispute that the BPA provided other regulatory notices. So if you look at the 825.300A3, it talks about employers having to put their FMLA rights in a handbook. And BPA did that. That's undisputed. In the handbook, it told its contractors go to MBO to invoke your leave. MBO is going to be responsible not only for your benefits and your payroll, you're going to be accountable to them. MBO had the right to fire Ms. Olson, just as BPA did, but also your leave. And that includes administrative leave, sick leave, and FMLA leave. And the Sixth Circuit's decision in grace, the USCAR mirrors this case perfectly in terms of establishing that the MBO type agency is a temporary placement agency in this context, because not only did they do the payroll services, but they handled the leave and they had the Yes. There are a lot of different legal principles at play in your argument and in what the district court did. But if we were to conclude that the district court's finding of no willfulness is not clearly erroneous, then the action was filed too late. And is it your understanding that if we went that route, we would not need to decide any other issues? I think if you went that route, you wouldn't necessarily need to decide any other issue. I think Judge Okuda's standing point might merit some mention if she believes there is no ordinance to a statute of limitations. The limitations is not jurisdictional in this case, and there is some conflating of the findings of fact with the willfulness in terms of a violation and the intermittent leave question. We do think there would be value to assessing the willfulness in a published opinion for a couple of reasons. First, I think you hit on the point, Judge Graber, when you talked about the statutory willfulness being a willful violation of the statute, and that is not of the regulations. And the only statutory notice is in 2619, and that is the general requirement to post notice in your break room. There's a $100 fine for that. There's no right to reinstatement. There's no right to liquidated damages. And when you get to the actual standard for willfulness under the FMLA, there's no decision of the Ninth Circuit that and the government would accept that standard, that it has to be a knowing or reckless disregard of statutory rights. And that is absolutely not an issue here. If you look at the factual findings the district court made, BPA was not trying to chill Ms. Olson's exercise or taking up her rights. And Judge Berzon in the Buckelder case says in an interference theory, the gravamen of that is chilling the exercise of rights. There's no dispute that Ms. Olson invoked FMLA beginning on March 17th, 2014. She took it all the way through June 5th. She did believe she took intermittent leave. Query whether or not that destroys a notice claim that she understood that she took intermittent leave. And she knew that not only because of her broad experience in reasonable accommodation law, but also her understanding of the FMLA. She worked closely with Susan Ripple, who was the BPA's FMLA coordinator. They worked in the same office side by side. And so for her to claim that she had no understanding of her FMLA rights on appeal, or even in the district court, really didn't hold water. She was able to exercise those rights, not only to invoke leave, to take leave, but then was willing to walk away from a $95 an hour job in order to vindicate her right to reinstatement to a substantially equivalent position. Now, we were able to prove and prevail on the fact that we offered her her same job when she came back from leave. But again, she was willing to walk away in order to vindicate that right. One other piece of information that dovetails with the counsel issue. As of April 30th, Ms. Olson retained counsel, Richard Senders. Richard Senders represented Ms. Olson through the administrative process. There was plenty of discovery that happened in the administrative process, and she used that discovery in the district court. Now, Mr. Senders, for unknown reasons, withdrew from her counsel, and she retained a second counsel, Michael Owens, who filed a district court complaint alleging ADA and FMLA claims against MBO. They did not sue BPA at that point. It was only after Michael Owens resigned, again, for unknown reasons, he only stated that Ms. Olson believes she would be better represented by someone else, that the district court then eventually appointed counsel for the limited purpose of an amended complaint. Now, in between there, Ms. Olson capably represented herself pro se. She was able to successfully get the assigned district judge to recuse himself based on a tenuous argument that because his spouse serves in the United States Congress, that he would somehow have an appearance of bias against Bonneville Power. And he recused himself, and so we got Judge Fernandez instead of Judge Simon. And Judge Fernandez then was able to appoint counsel appropriately so that she could file an amended complaint, and again, so that she could prosecute her right at trial. In between there, she retained a third counsel, David Griggs, who was able to successfully debut a summary judgment motion. Now, mind you, $95 an hour over a three and a half year contract, she made a half a million bucks off of BPA. And for her to argue now that she's deserved counsel at an earlier time, again, we think that the district court did not abuse its discretion in that regard. And she's highly educated. You know, she has her bachelor's in business administration. She has a master's degree in rehabilitation services. And so again, this is not the typical pro se plaintiff. Another factual point that I think Merrick mentioned is the nature of Ms. Olson's disabling condition. It was not her hearing loss. In this case, it was workplace anxiety. Her inability to get along with her direct supervisor, Sharon Hale-Mockley, with the supplemental labor manager, Scott Hampton, with the disability program manager, that was Matthew McTeer. All of these interpersonal office politics, she thought Matthew McTeer was trying to take her job away and invade her turf. Those issues never resolved. In fact, when she took leave, another and thought she would do an extra couple dollars an hour. And so that ended up stressing her. She filed ethics complaints against Matthew McTeer. She filed a contracting action with regards to the NBO relationship. These things stressed her out to the point where she could not return to work. And this point, I think, is very important for employers throughout the Ninth Circuit. If you are unable to do your job, you have absolutely no right to intermittent leave. Intermittent leave is reduced schedule leave. It is not a job restructuring. It is not a reassignment to a different position. Those are ADA potential rights, but they are not rights under the FMLA. And for Ms. Olson to say she was somehow entitled to cherry pick one task one hour a week and log on for an internet training, that is unacceptable to BPA and to an employee who can do all of their job some of the time. Ms. Olson could do all of her job none of the time. Once this anxiety became debilitating, and again, we did not challenge whether or not it was an actual qualifying condition, but taking the record at its face, and Mr. Abbasi has capably represented Ms. Olson on appeal, they concede that she was not able to the essential functions of her job. At that point, she has no right to intermittent leave. She has no right to restoration. And this is the silver bullet for Judge Hernandez's opinion, because you could not possibly be prejudiced with your FMLA rights if you cannot do your job. You have no right to be restored to it. You have no right to work a couple of hours every week doing whatever task you think you can do, especially when your disabling condition is workplace anxiety. Now, that's an issue of first impression, but we believe that the Eighth Circuit's decision in Hatchet v. Philander-Smith College and the Second Circuit's decision in Sarno, both are very well reasoned. They talk about the text, the purpose, and the history and the common sense behind the FMLA to balance both the employer's rights and the having the employer help the employee get better. The FMLA is concerned with allowing the employee to leave work, go get better, and then come back to a job that's waiting for them. Ms. Olson has tried to conflate the Americans with Disabilities Act rights with the Family and Medical Leave Act rights, and we believe that's an important point to clarify for employers throughout the circuit. I would like to talk a little bit more about the willfulness. We feel that, Judge Graber, that you have the point right that there can possibly be no willful violation here because there's been no attempt by BPA to prevent Ms. Olson from taking her rights. Not only did we freely grant her leave and no questions asked, but on multiple occasions, Bonneville Power tried to get Ms. Olson back to work. We tried to set up a meeting on April 1st. She no-shipped. That was two weeks into her leave just to understand what was going on. Again, on April 30th, she was mistakenly terminated by a form email. That email was retracted one minute later or attempted to be retracted. It was unsuccessful, and then 16 minutes after that, the clarifying email was sent that, hey, you've been out of the office for 30 days because we run the electrical grid for the entire Pacific Northwest. We have to revoke your network access. On May 1st, Mr. Hampton, the Supplemental Labor Manager, invited her to come back on site. We'll get your access restored. You could telework at that point, but you could not telework. You cannot do any of your job function if you aren't able to come back to work and meet with us. She couldn't do that. Again, on June 5th was finally the time when she was able to come on site. At that point, she'd been at 11 weeks of leave minus the 9.6 hours that she worked intermittently, in her view, and she would pay for all of that. Again, we don't think there's any damage here, even if you were to find a violation. She came on site. She disclosed her medical restrictions at that time. She was not able to come on site. She was not able to meet with any of her co-workers, which is an essential function of being an RA coordinator, so that you can do the interactive process. She couldn't meet with Scott Hampton, the Supplemental Labor Manager. She said that was against the advice of her doctor, and she still couldn't deal with Sharon Hale-Mockley, her direct supervisor. Again, another essential function of the job. So what did BPA do? They invited her back to the same position, and under the accommodation she requested, that she would be able to telework. She would be able to try a five-hour period of work, and at that point, she could revisit with her doctor and see what else might be needed. Instead of taking that opportunity, the accommodation she asked for, she no-showed. She did not return to work. She sent an email to Sharon Hale-Mockley saying, I'm not going to do this. You can talk to my lawyer. She had lawyered up already for three months, and so to say that there's any potential prejudice to her FMLA rights from the BPA not giving her notice, again, when everyone under the facts of this case thought MBO acted as if MBO was the primary employer, there absolutely cannot be a willful violation. The violation here was willful if BPA knew or was reckless in misclassifying Ms. Olson. Now, the judge made no findings regarding the relationship between MBO and BPA. Now, as Mr. Hager has recognized, Ms. Olson did take some intermittent leave. She actually wanted to take more. She wanted to actually work more during her leave. The point in time that's important in this case is the period of May. Again, we're not disputing that she wasn't able to do her job, and this is what the judge found. At the end, in June, she couldn't do her job anymore. That was the burden that the U.S. carried. There is nothing in this, the findings of fact and conclusions of the law, to say that she couldn't do her job earlier. In fact, we believe it was the failure to notify that actually affected her throughout this leave because she believed she invoked intermittent leave. She tried taking it. Whenever she would take it, her employer, BPA, would say, stop working. Your Honor, there's a stop work order. Stop working. Eventually, she's not in the office. They cut her access off. Now, I'm not saying that cutting the access was willful. What I'm saying is the failure to notify was willful, and because the failure to notify was willful, she was prejudiced because she wasn't able to take as intermittent leave as she wanted. She wanted to be able to return to work. She wanted to be able to have a trial work period. I want to address the other issues briefly. The only reason we raise equitable tolling is to show the injustice in allowing her to pursue her rights through an administrative forum and then, after the statute of limitations passes, to kick her out. Regarding the appointment of counsel, she was appointed counsel. We do not challenge that appointment of counsel, which means she did qualify under the statute for an appointment of counsel. Thank you, Your Honor. Thank you, counsel. The case just argued is submitted, and we appreciate very much the helpful arguments from both of you in this challenging case. With that, we are adjourned for this morning's session. The court for this session now stands adjourned. Thank you.
judges: Graber, Ikuta, Benitez